UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHONTEL M. MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:11-cv-1004-TWP-DML |
| | ) |
| POLARIS LABORATORIES, INC., | ) |
| | ) |
| Defendant. | ) |

## Order on Motions Regarding Deposition of Non-Party

Defendant Polaris Laboratories, Inc.'s subpoena for the deposition of non-party witness Bobbie Jo Young has generated several motions that became fully briefed on April 18, 2013. Those motions are:

- Bobbie Jo Young's motion to quash non-party deposition subpoena (Dkt. 67)

- Polaris's motion to stay discovery deadline pending the adjudication of Ms. Young's motion to quash (Dkt. 72)

- Polaris's motion for leave to file surreply in opposition to Ms. Young's motion (Dkt. 78)

- Polaris's motion to strike plaintiff Chontel M. Miller's brief in support of Ms. Young's motion to quash (Dkt. 79)

The court GRANTS Polaris's motion to file its surreply (Dkt. 78), and directs the clerk to docket the surreply found at Dkt. 78-1. And because Ms. Miller has a stake in the conduct of discovery, including the question of whether Ms. Young's deposition will be permitted, the court finds it appropriate to consider Ms. Miller's

arguments and thus DENIES Polaris's motion to strike Ms. Miller's brief (Dkt. 79). For the reasons explained below, Ms. Young's motion to quash (Dkt. 67) is DENIED, and Polaris's motion to stay discovery deadline (Dkt. 72) is GRANTED.

## Background

Plaintiff Chontel M. Miller alleges that her former employer Polaris, in violation of Title VII and 28 U.S.C. § 1981, discriminated against her based on race and retaliated against her because of her complaints of race discrimination. Polaris terminated Ms. Miller's employment on April 30, 2010.  She filed a charge of discrimination with the EEOC on November 12, 2010, and filed this lawsuit on July 27, 2011.  At some point, Ms. Miller identified a former Polaris co-employee, Bobbie Jo Young, as a potential comparator she wanted to depose.  (Ms. Miller had sought and obtained Ms. Young's personnel file during discovery.) On August 27, 2012, Ms. Miller asked the court to extend the fact discovery deadline so she could depose Ms. Young and three other Polaris employees or representatives.  Magistrate Judge LaRue granted that extension.  During a status conference before Judge LaRue on December 7, 2012, Ms. Miller's counsel explained that he still needed to depose Ms. Young and that, because her testimony would be critical and relevant, a further extension of the fact discovery deadline was necessary.  Judge LaRue granted an extension until February 28, 2013, for the completion of fact discovery, including Ms. Young's deposition.

After the conference, Ms. Miller's counsel sought dates from Polaris to depose four Polaris employees or representatives:  (a) Ms. Young and Kristi Reed, who are

or were low-level employees with jobs similar to the job Ms. Miller had had, and (b) Mark Minges and Don Woods, two persons who, as the court understands it, are owners of Polaris who were involved in the decision to terminate Ms. Miller's employment.

Polaris's director of human resources (Ms. Miriam Posluszny) contacted the lower-level employees, Ms. Young and Ms. Reed, about whether they wanted an opportunity to discuss with Polaris's counsel—Jan Michelsen—representation by Ms. Michelsen at their depositions. Each was also given a letter dated December 13, 2012, titled "Joint Defense Agreement," setting forth the terms and conditions under which Ms. Michelsen's firm agreed it would represent Ms. Young and Ms. Reed solely for purposes of their depositions. *See* Dkt. 68-1 (Letter to Ms. Young dated December 13, 2012). A telephone conference was conducted on December 19, 2012, in which Ms. Young, Ms. Reed, and Ms. Posluszny, the HR director, were present in Ms. Posluszny's office, and Ms. Michelsen was present by phone. During that telephone conference, Ms. Michelsen explained that Ms. Miller's counsel had requested Ms. Young's and Ms. Reed's depositions and that, if they chose, she would represent them at their depositions under the terms of the Joint Defense Agreement.[1]

---

[1] The court's recitation of the facts surrounding the December 19 conference comes from the affidavits of Ms. Michelsen (Dkt. 73-2), Ms. Posluszny (Dkt. 73-1), and Ms. Reed (Dkt. 73-3). These facts have not been disputed by Ms. Young or Ms. Miller.

The Joint Defense Agreement Ms. Young[2] received stated that Ms. Michelsen's firm, based on its understanding at that time of the facts, did not perceive any conflict of interest between representing Ms. Young for purposes of her deposition and representing Polaris in its defense of Ms. Miller's lawsuit. The Agreement stated that "[i]t appears that both you and POLARIS share common goals and interests in this lawsuit." The Agreement required Ms. Young to disclose fully and accurately all facts that may be relevant; it allowed the law firm to withdraw from representing Ms. Young if a conflict of interest developed; and it contained Ms. Young's advance consent to the law firm's withdrawal from representing Ms. Young but continuing to represent Polaris if any conflict or apparent conflict developed. The Agreement explained that a conflict could arise if Ms. Young had information that could be harmful to Polaris's interests in the case. (*See* Dkt. 68-1 at pp. 2-3).

Ms. Michelsen also told Ms. Young and Ms. Reed during the telephone conference that they did not have to be represented at all at their depositions and that if they desired representation, they did not have to be represented by Ms. Michelsen and could hire their own counsel. The telephone conference was a short one and following the conference, both Ms. Reed and Ms. Young signed the Joint Defense Agreement. Ms. Young's signature and the date of December 19, 2012, appears on page 4 of the letter to her above the statement "I have read and

---

[2] Although a Joint Defense Agreement was given to both Ms. Young and Ms. Reed and both signed them, the court will hereafter refer only to Ms. Young in connection with its terms.

understand the terms and conditions set forth in this letter (including the conflicts waiver provision) and agree to them."[3] Although she signed the document, Ms. Young apparently never read any part of the Agreement or asked any questions about any provisions in the Agreement before she signed it.

The telephone conference with Ms. Michelsen on December 19, 2012, was the only communication between Ms. Young and Ms. Michelsen. The substance of Ms. Young's (and Ms. Reed's) potential testimony and Ms. Young's knowledge—or lack of knowledge—of information salient to Ms. Miller's claims was not discussed during this conversation. Ms. Young agrees that at no time did she share with Ms. Michelsen any information regarding Ms. Miller's allegations and her complaint. During the conference, Ms. Michelsen provided only basic information about depositions generally.

According to Ms. Young, after the telephone conference in Ms. Posluszny's office on December 19 had ended and after Ms. Reed had left the meeting, she told Ms. Posluszny that she believes some of Ms. Miller's allegations in her lawsuit are true. (Dkt. 75-1 at ¶ 12). Ms. Young's affidavit does not reveal exactly what Ms. Young told Ms. Posluszny, nor does it describe the allegations by Ms. Miller to which she was referring. Her affidavit states that she "said to Posluszny that some of [Ms.] Miller's allegations that were discussed by Attorney Michelsen were true."

---

[3] Ms. Young says she signed the Joint Defense Agreement, apparently without reading it, because she wanted a lawyer at her deposition. She was told during the meeting she could hire her own lawyer or not have a lawyer at all. Of those three options, Ms. Young decided to use the company's lawyer, even though—according to the assertions she now makes—she believed at the time she signed it that her interests were not aligned with those of the company. (Dkt. 75-1 at ¶ 15).

5

(*Id.*). Ms. Posluszny denies that any such conversation occurred. (Dkt. 73-1, ¶¶ 27-29).

The court does not need to make a finding regarding that factual conflict in order to resolve the motion to quash. The court notes, however, that Ms. Young—despite the Agreement's clear directive to tell counsel "all facts," and the clear language that a conflict could develop if Ms. Miller's allegations turn out to be founded in objective fact or Ms. Young's statements appear to be potentially harmful to Polaris—never advised Ms. Michelsen of any of the matters she now says she told Ms. Posluszny on December 19.

For her part, Ms. Michelsen has declared that she first learned of the assertions Ms. Young describes in her affidavit about Polaris's conduct toward Ms. Miller when Ms. Young filed her motion to quash. Based on Polaris's internal investigation of a race complaint made by Ms. Miller during her employment, Ms. Michelsen says she did not believe any conflict existed between representing Polaris in this case and limited representation of Ms. Young at the deposition Ms. Miller planned to take. Ms. Young faults Ms. Michelsen (and Polaris) for failing to conduct an investigation into Ms. Young's knowledge before offering to represent her for her deposition,[4] but Ms. Young never advised Ms. Michelsen that she was aware of facts

---

[4] In September 2009, Ms. Miller had complained to Polaris management that other employees had referred to her in racially derogatory terms and that certain other employees were racially prejudiced. In the course of an internal investigation, Ms. Young was interviewed as a witness identified by Ms. Miller as having overheard the racially derogatory statement. The results of the investigation are reported in a document stating that Ms. Young "said she had never heard anyone say anything unkind about" Ms. Miller. Dkt. 75-2. Ms. Young now asserts that she

6

that support Ms. Miller. In any event, the court also finds it unnecessary in the context of the motions before the court to determine whether Ms. Michelsen should have done more to investigate Ms. Young's knowledge before offering representation.

On January 14, 2013, Polaris terminated Ms. Young's employment.

On January 23, 2013, Ms. Miller's counsel issued a notice to depose Ms. Young on February 6; an amended notice was issued on January 31, to take Ms. Young's deposition on February 12.

On February 4, 2013, attorney John Haskin notified Ms. Michelsen that he represents Ms. Young with respect to her former employment at Polaris, and that Ms. Miller's counsel must communicate with him regarding Ms. Young's deposition. Mr. Haskin advised that Ms. Young had hired his firm "to represent her in all employment matters which would include [the Miller] litigation if it is employment litigation involving Polaris." (Dkt. 72-3 at p. 2). Ms. Michelsen then notified Ms. Miller's counsel that her firm was no longer representing Ms. Young for purposes of her deposition, and that Mr. Haskin represented her instead. (Dkt. 72-4). On February 11, 2013, Ms. Michelsen emailed Ms. Miller's counsel to inquire whether Ms. Young's deposition was still scheduled for the following day, as provided in his

---

was never asked during this investigation or at any other time about other instances of what she perceived as racially discriminatory treatment of Ms. Miller. Ms. Young contends that after September 2009, she heard an employee call Ms. Miller a "stupid nigger bitch," witnessed circumstances in which Ms. Miller was treated less favorably than white employees, including steps by a supervisor to make Ms. Miller's job harder than white employees' jobs.

notice of deposition. He responded that the deposition was not going forward. (Dkt. 72-5).

Fact discovery had been extended only to February 28, 2013, and because Ms. Miller's counsel apparently had determined it was unnecessary for him to take Ms. Young's deposition, Ms. Michelsen thus sought to schedule Ms. Young's deposition before February 28, and asked Ms. Young's counsel to provide available dates. (Dkt. 72-6). When she did not receive a response to her inquiries, on February 18, Polaris noticed Ms. Young's deposition for February 26, and asked Ms. Young's counsel, Mr. Haskin, whether a deposition subpoena would be necessary. (Dkt. 72-8). Ms. Michelsen received no response, and on February 20, she asked Ms. Young's counsel to confirm that Ms. Young would be appearing for deposition on February 26. (Dkt. 72-9). Later that day, Ms. Young's counsel advised that Ms. Young would not appear and that she intended to file a motion to quash the notice of deposition. (Dkt. 72-9). She filed that motion at 11:17 p.m. on February 20.

## Preliminary Matter

Before specifically addressing the motion to quash, the court deems it appropriate to discuss a collateral matter raised in the filings. Ms. Young has suggested that, during the conference on December 19, Ms. Michelsen counseled Ms. Young and Ms. Reed on a strategy for lying—or at least evading the truth—in their depositions by saying "I do not recall" to answer questions about old events. Ms. Reed denies that Ms. Michelsen instructed her or Ms. Young to "report we could remember or did not know, if we could remember or did know." (Dkt. 73-3, ¶ 8).

8

Ms. Michelsen says that she explained that a witness must tell the truth in responding to deposition questions. The court observes that litigation counsel routinely counsel witnesses that they should be sure of the truthfulness of their answers to deposition questions and that an "I don't recall" or "I don't remember" answer is appropriate if one actually does not recall and a positive answer would be guesswork or speculation. As far as the court can tell from Ms. Young's, Ms. Michelsen's, and Ms. Reed's affidavits, this appears to be the context of the discussion regarding the duty to tell the truth in depositions and "I don't recall" answers.

That discussion is not directly material to the issues before the court, but the court will address it here because it bears on the broader policy arguments counsel for Ms. Young and Ms. Miller have advanced in support of the motion to quash. Based on the record before it, it was not reasonable for Ms. Young to have believed she was being told to lie in a deposition, if that is in fact the impression she was left with. Moreover, Ms. Young asserts, on the one hand, that the whole of the Joint Defense Agreement, including the provisions regarding conflicts, was coercive to her, and led her to believe that she must provide deposition testimony that aligned with Polaris's defense interests no matter the truth. But on the other hand, she asserts that she never read, understood, or appreciated the meaning of the Joint Defense Agreement. Finally, Ms. Young says that when she informed Ms. Posluszny of her support for some of Ms. Miller's allegations, she also told Ms. Posluszny that she would testify truthfully at her deposition. That suggests that

Ms. Young was never, in fact, under the impression from her conversation with Ms. Michelsen or anything she had read in the Joint Defense Agreement (if she had read it) that she was being coerced, or any suggestion was being made, to do anything other than tell the truth during her deposition.

## Analysis of Motion to Quash

Ms. Young's motion asks the court to quash the notice of deposition issued by Polaris to take her deposition, and seeks a ruling that any subpoena from Polaris—so long as it is represented by the law firm of Ogletree Deakins—is improper and will be quashed as well.  (*See* Dkt. 68 at WHEREFORE clause on p. 8).  In her reply brief, Ms. Young clarifies that she does not contend that Polaris should be prevented from taking her deposition, but that no attorneys associated with Ogletree Deakins should be permitted to take it. Her motion thus essentially asks the court to disqualify the law firm of Ogletree Deakins from representing Polaris for purposes of taking Ms. Young's deposition. It is noteworthy, however, that Ms. Young did not file a motion to disqualify Ogletree Deakins, and neither her opening brief nor her reply brief cites any case authority supportive of that relief, other than general authority that a court may disqualify counsel  because of a violation of the Indiana Rules of Professional Conduct.  (*See* Dkt. 68 at pp. 5-6).

Ms. Young's opening brief suggests that Ogletree Deakins violated Rule 1.7, which addresses conflicts of interests between current clients, and she devotes one paragraph to a section of Rule 1.9, which provides that a lawyer who formerly represented a client may not thereafter represent another client in the same or

10

substantially related matter in which the clients' interests are materially adverse without the consent of the former client. (Dkt. 68 at p. 8). And in her reply brief, Ms. Young asserts that Rule 3.7 (the lawyer advocate as witness rule) is relevant.

Rule 1.7 or Rule 3.7 are not relevant to the disqualification issues presented here. Rule 1.7 does not apply because Ms. Young is not Ogletree Deakins's current client. Rule 3.7 does not apply because there is no suggestion that Ms. Michelsen or any lawyer at Ogletree Deakins may be a witness at Ms. Miller's trial. Indeed, the scattershot nature of Ms. Young's (and Ms. Miller's) arguments and the lack of citation to relevant authority suggest they are attempting to raise general complaints that do not focus on the issues in this litigation or on the factual record surrounding Ms. Young's deposition. *See Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 721 (7th Cir. 1982) (attorney disqualification, "as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary").

Rather, the court perceives in the parties' briefing longstanding points of contention between the employment plaintiffs' and defense bar generally regarding representation by employer's counsel of low-level employees at depositions. Ms. Young and Ms. Miller decry generally a practice they say is routinely engaged by employer-defense firms like Ogletree Deakins to offer limited representation at depositions of low-level employees. Using Ms. Young as an example, they suggest that this practice is designed to shelter low-level employees from *ex parte* contact by plaintiff's counsel, is designed to silently coerce or nudge an employee to believe she

11

must testify favorably to her employer, and is routinely implemented without full understanding by the employee of the ways in which her interests may conflict with the company's interests or understanding of the protections against retaliation in Title VII cases.

The court is not averse to tackling these policy issues and addressing arguments that defense counsel have engaged in abusive practices *if* those concerns are implicated by the evidence before the court. But the facts presented in this case and relevant to this pending motion do not warrant the court's foray into a general discussion of Ogletree Deakins's ethical obligations in simultaneously defending the interests of an employer in a suit by a former employee and representing low-level employee witnesses at their depositions.

Nothing in the record supports the conclusion that Ms. Young was coerced into anything. The evidence is she understood her obligation to tell the truth at a deposition. Moreover, Ms. Miller believed for many months or even more than a year before December 19, 2012, that Ms. Young was an important witness. There is no evidence presented that she attempted to contact or interview Ms. Young before Ms. Young signed the Joint Defense Agreement and no suggestion that Polaris or Ogletree Deakins did anything before December 19 to prevent Ms. Miller's counsel from contacting Ms. Young on an *ex parte* basis.

Rule 1.9, which deals with conflicts of interest between former and current clients, is the rule most relevant to the situation presented here, though it does not fit exactly. Ogletree Deakins's questioning of Ms. Young as a non-party witness at a

deposition is not the paradigmatic switching of sides in litigation against one's former client that Rule 1.9 addresses. But even when the court applies Rule 1.9, its strictures do not require the disqualification of Ogletree Deakins from taking Ms. Young's deposition. It is undisputed that the attorney-client relationship between Ogletree Deakins and Ms. Young was one of limited representation, and limited to Ms. Young's deposition. *See* Ind. Prof. Cond. R. 1.2(c) (lawyer's representation of client may be limited in scope if the client consents after consultation). And it is undisputed that the deposition never occurred during the period of the representation. It is further undisputed that Ms. Young never shared one iota of a confidential communication with Ms. Michelsen or any other lawyer at Ogletree Deakins.

Lawyer disqualification in litigation serves the purposes of protecting from disclosure confidences that a client shared with his lawyer and of avoiding the possibility that those confidences, even inadvertently, could be used against the client. *See LaSalle Nat'l Bank v. Lake County*, 703 F.2d 252, 255 (7th Cir. 1983) (internal quotations omitted) ("question before a district court considering a motion for disqualification is 'whether it could reasonably be said that during the former representation the attorney might have acquired information related to the subject matter of the subsequent representation'"). Generally, courts use a substantial relationship test between the former and current representation to determine whether the danger of comprising the sanctity of confidential information exchanged or learned during the former representation is such that the lawyer must

13

be disqualified from representing a current client in a matter against a former client. *Id.* at 255-56. Under this test, the court reconstructs the scope of the prior representation, determines "whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters," and then determines "whether that information is relevant to the issues raised in the litigation pending against the former client." *Id.*

There is no danger here that Ogletree Deakins may compromise, even inadvertently, any confidential communications exchanged by Ms. Young or otherwise learned by Ogletree Deakins in the scope of its representation of Ms. Young. In fact, Ogletree Deakins did not have one single communication with Ms. Young during the time period of the representation, and the deposition to which the scope of the representation was limited never even took place. There is simply no information that Ms. Michelsen or Ogletree Deakins learned from Ms. Young in the context of an attorney-client relationship that possibly could be used against Ms. Young at her deposition now.

Given these facts, the court finds no reason for prohibiting Ms. Young's deposition by Ogletree Deakins. *See Jones & Henry Engineers, Ltd. v. Town of Orland,* 942 F. Supp. 1202, 1207 (N.D. Ind. 1996) (declining to disqualify lawyer from representing engineering firm in litigation against municipality regarding waste water treatment facility when lawyer previously defended the municipality in a public lawsuit over the treatment facility, when lawyer was not privy to any confidential information or secrets of the municipality in the prior representation).

Accordingly, the court DENIES Ms. Young's motion to prohibit her deposition by Polaris if it is represented at the deposition by an attorney with Ogletree Deakins.

### Polaris's Motion to Permit the Deposition after February 28

As noted earlier in this Order, the court had extended the fact discovery cut-off to February 28, 2013. Before that date, Polaris moved to extend it for the purpose of its taking Ms. Young's deposition in the event that the court denies Ms. Young's motion.

The court finds that Polaris's motion is well taken, and the court will permit Polaris to take Ms. Young's deposition by June 21, 2013.

### Conclusion

The court GRANTS Polaris's motion to file its surreply (Dkt. 78), and directs the clerk to docket the surreply at Dkt. 78-1. The court DENIES Polaris's motion to strike Ms. Miller's brief (Dkt. 79).

Ms. Young's motion (Dkt. 67) forbidding her deposition by Polaris if Polaris is represented by a lawyer with Ogletree Deakins is DENIED. Polaris's motion to stay the discovery deadline (Dkt. 72) pending the adjudication of Ms. Young's motion is GRANTED. Counsel for Polaris, Ms. Miller, and Ms. Young must cooperate with one another to promptly schedule Ms. Young's deposition, so that a deposition subpoena may issue and the deposition completed by June 21, 2013.

**So ORDERED.**

**Date:** 05/24/2013

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

**Distribution to all counsel of record via CM/ECF.**