UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHONTEL M. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11-cv-01004-TWP-DML |
| | ) | |
| POLARIS LABORATORIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER ON MOTIONS IN *LIMINE*

This matter is before the Court on Defendant Polaris Laboratories, LLC's ("Polaris")

Motion in *Limine* (Filing No. 183) and Plaintiff Chontel M. Miller's ("Ms. Miller") Motion in

*Limine* (Filing No. 189). In this employment discrimination action, Ms. Miller seeks damages and

reinstatement for Polaris's race discrimination and retaliation that resulted in Ms. Miller's

termination. In its Motion in *Limine*, Polaris seeks to prohibit Ms. Miller and her attorneys and

witnesses from introducing evidence or testimony regarding fifteen topics. Ms. Miller's Motion in

*Limine* seeks to prohibit evidence and testimony of (1) summaries of voluminous writings that

were not produced to Ms. Miller, (2) Ms. Miller's arrest record and two misdemeanor convictions,

and (3) Ms. Miller's marital status. For the following reasons, Polaris's Motion in *Limine* is

**granted in part and denied in part**, and Ms. Miller's Motion in *Limine* is **granted in part and

denied in part**.

## I.   LEGAL STANDARD

The Court excludes evidence on a motion in *limine* only if the evidence clearly is not

admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc*., 831 F. Supp.

1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings

must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id*. at 1400–01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the Court is unable to determine whether the evidence should be excluded. *Id*. at 1401.

## II.    BACKGROUND

Headquartered in Indianapolis, Indiana, Polaris is a company that processes and analyzes lubricants, oils, coolants, and other fluids. Ms. Miller, an African American, was hired by Polaris on August 17, 2009, as a Sample Processing Technician ("Sample Processor"). A Sample Processor reviews samples received from customers and then logs data about the samples into a computer database. When she was hired, Ms. Miller was the only African American in her department. Her direct supervisor, Rhonda Ballard ("Ms. Ballard"), was also a Sample Processor. Ms. Ballard's supervisor was Debbie New ("Ms. New"). A few weeks into Ms. Miller's employment, she complained to Ms. New that Ms. Ballard was not properly training her. Ms. New began training Ms. Miller and another new employee in a separate training room away from the main department work area.

On September 18, 2009, a verbal altercation took place among Ms. Miller, Ms. Ballard, and two other employees. An employee told Ms. Miller that another employee or Ms. Ballard called Ms. Miller "the colored girl." After frustrations with work and other employees, Ms. Miller shouted at one of the other employees, which drew Ms. Ballard into the room. Ms. Miller accused Ms. Ballard of calling her "the colored girl," of being racist and prejudiced, and of treating her differently. This confrontation led to discussions with higher supervisors at Polaris and an internal investigation. The internal investigation closed without any action.

Throughout the remainder of her employment at Polaris, Ms. Miller often complained to Ms. New because she was treated as an outcast, given more difficult work, and her work was tampered with by Ms. Ballard and other employees. On multiple occasions, Ms. Miller caught Ms. Ballard altering her sample trays. Ms. Miller told Ms. New she thought she was treated differently because she was "the colored girl." Ms. New did not follow up on Ms. Miller's complaints.

In the first four months on the job, Ms. Miller averaged 123 samples logged per day. She was required to meet a quota of an average of 260 samples per day. Ms. New had discussions with Ms. Miller about her lack of speed, not meeting the quota, and the need to get her production level up to department expectation. Ms. Miller's February 2010 performance evaluation directed that Ms. Miller needed to average 260 samples per day for 2010, and she needed to be averaging this goal by the end of March. At the end of March, Ms. Miller was logging an average of 189 samples per day. Polaris placed Ms. Miller on probation on April 7, 2010, stating that Ms. Miller must meet the quota of 260 samples per day for the month of April. By April 29, 2010, Ms. Miller was averaging 184 samples per day. As a result of Ms. Miller's failure to meet the daily quota, Ms. New recommended that Ms. Miller be terminated. Polaris reviewed the production data and Ms. Miller's numbers and concluded that termination was warranted for low productivity. It appears that this review did not account for Ms. Miller's complaints that her production level was being sabotaged. On April 29, 2010, Ms. Miller was told she was terminated for failing to meet the 260 average daily quota.

## III.   DISCUSSION

Polaris and Ms. Miller each seek an order in *limine*, prohibiting the introduction of certain evidence, testimony, and argument during the trial of this matter. The Court will address each Motion in *Limine* in turn.

A. **Polaris's Motion in *Limine***

Polaris requests an order in *limine* on fifteen topics. Ms. Miller filed a Response in Opposition to Polaris's Motion in *Limine* on April 20, 2016 (Filing No. 203). The Court will discuss each topic separately.

1. **Any reference to other lawsuits, EEOC charges, or administrative claims in which Polaris has been named a party or defendant, including the claims of retaliation by Bobbi Jo Young.**

Polaris asks the Court to prohibit any reference to other lawsuits, EEOC charges, or administrative claims in which Polaris has been named a party or defendant, including the claims of retaliation by Bobbi Jo Young. Polaris explains that such evidence has no probative value, and thus, would be substantially outweighed by the unfair prejudice that would result from the presentation of such evidence to the jury. Polaris cites to numerous cases that have prohibited the use of evidence about other lawsuits or claims against defendants under Federal Rules of Evidence 403 and 404(b) because such evidence is irrelevant, unfairly prejudicial, and invites a trial within a trial which is disfavored. *See Manuel v. City of Chicago*, 335 F.3d 592, 596–97 (7th Cir. 2003); *Stopka v. Alliance of American Insurers*, 141 F.3d 681 (7th Cir. 1998); *Sims v. Mulcahy*, 902 F.2d 524 (7th Cir. 1990); *McCluney v. Jos. Schlitz Brewing Co.*, 728 F.2d 924 (7th Cir. 1984); *Williams v. Lovchik*, 2012 U.S. Dist. LEXIS 99657 (S.D. Ind. July 18, 2012); *Shea v. Galaxie Lumber,* 1996 U.S. Dist. LEXIS 2904 (N.D. Ill. March 12, 1996); *Janopoulos v. Harvey L. Walner & Assoc.*, 1994 U.S. Dist. LEXIS 4041 (N.D. Ill. 1994). Polaris asserts that "[w]hat allegedly occurred with regard to Young's employment *under a different supervisor and manager* more than four years after Miller departed POLARIS is simply not relevant to whether POLARIS discriminated or retaliated against Miller." (Filing No. 184 at 2.) The Court concludes that such evidence would be unfairly prejudicial, irrelevant, and cause undue delay, and thus **GRANTS** Polaris's request to

prohibit references to other lawsuits, EEOC charges, or administrative claims in which Polaris has been named a party or defendant.

### 2. Inadmissible hearsay, second-hand evidence.

Next, Polaris asks the Court to prohibit any inadmissible hearsay, second-hand evidence based on Rule 801, explaining that Ms. Miller may attempt to testify concerning discriminatory statements that she did not personally hear or observe first-hand. While inadmissible hearsay will not be allowed during trial, and the parties should not attempt to elicit such testimony, the Court declines at this stage of the litigation to place a blanket prohibition on a broad category of testimony without identification of specific questions, and the context of specific questions actually being asked during trial. For this reason, the Court **DENIES** this section of Polaris's Motion in *Limine*.

### 3. Any statistical analysis not properly authenticated and supported by proper witness testimony.

Polaris next explains that lay opinions and inferences, as compared with opinions and inferences of experts, may not be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702," quoting from Rule 701. Lay opinion "most often takes the form of a summary of firsthand sensory observations" and may not "provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012). Polaris explains that it anticipates Ms. Miller's counsel will attempt to introduce his own statistical analysis of the raw data provided by Polaris in discovery and that any such references must be excluded because opposing counsel cannot testify in this matter as a witness where he is also serving as an attorney, and additionally, opposing counsel is not an expert in statistical analysis.

Without any evidence or testimony currently before the Court, it is difficult to determine what level of "scientific, technical, or other specialized knowledge" is required, if any, relating to statistical data that may be presented. On this basis, the Court **DENIES** Polaris's request. However, the Court notes that counsel may not serve as a witness, or an expert witness, in a matter wherein he or she serves as an attorney. To the extent Polaris's request seeks to prohibit Ms. Miller's counsel from serving as a witness or expert witness during trial, the request is **GRANTED**.

**4.   Lay opinion testimony regarding legal conclusions.**

Polaris requests that the Court prohibit any lay testimony regarding legal conclusions and explains that even an expert witness is not permitted to offer testimony as to legal conclusions that will determine the outcome of a case, citing *Good Shepherd Manor Foundation v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). Jury instructions from the Court will provide the legal standards to the jury. While lay testimony regarding legal conclusions will not be allowed during trial, and the parties should not attempt to elicit such testimony, the Court declines at this stage of the litigation to place a blanket prohibition on a broad category of testimony without the context of specific questions actually being asked during trial. For this reason, the Court **DENIES** this section of Polaris's Motion in *Limine*.

**5.   Speculative testimony and witness testimony lacking evidentiary basis and not based on personal knowledge.**

For the reasons explained in the section above concerning inadmissible hearsay, the Court **DENIES** this request from Polaris and will wait to make evidentiary determinations within the context of trial. However, the Court notes that speculative testimony will not be allowed during trial, and the parties should not attempt to elicit such testimony.

**6. Evidence and argument that Ms. Miller worked in a "hostile work environment" or was otherwise "harassed" during her employment with Polaris.**

For the reasons explained in the sections above concerning inadmissible hearsay and legal conclusions, the Court **DENIES** this request from Polaris and will wait to make evidentiary determinations within the context of trial. However, the Court notes that counsel should present evidence and elicit testimony relevant to the two claims at issue—race discrimination and retaliation.

**7. Evidence regarding settlement negotiations or the lack of settlement in this case.**

"It is well-settled that settlement negotiations are not admissible at trial. *See* Fed. R. Evid. 408." *Williams*, 2012 U.S. Dist. LEXIS 99657, at *3. The purpose of Rule 408 is to encourage settlements, which purpose would be chilled if parties feared their efforts or the failure of such efforts would be evidence of liability at a later trial. *Kritickos v. Palmer Johnson, Inc.*, 821 F.2d 418, 423 (7th Cir. 1987). The Court **GRANTS** Polaris's request to prohibit any evidence regarding settlement negotiations or the lack of settlement in this case.

**8. Evidence or argument in support of compensatory and punitive damages.**

Next, Polaris asks the Court to prohibit any evidence of compensatory or punitive damages because Ms. Miller failed to comply with the requirement of Rule 26 to provide "a computation of each category of damages . . . [and] the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." F.R.C.P. 26(a)(1)(A)(iii). Polaris explains that Ms. Miller's initial disclosures regarding compensatory and punitive damages merely stated that the damages are "more than $300,000" with no further information. She did not provide any additional information in her interrogatory responses or in any of her statements or special damages. She

7

failed to supplement any of her responses to requests for production to provide documents supporting any such calculation.

Polaris asserts that it is impossible to determine how Ms. Miller's claimed damages were calculated because no calculation or evidentiary support has been provided, which also makes it impossible for Polaris to prepare a defense to the damages claim. Polaris relies on *Barlow v. General Motors Corp.*, 595 F. Supp. 2d 929, 938 (S.D. Ind. 2009), asserting that failing to provide computations and supporting documentation of damages was done at Ms. Miller's own peril, and the proper result is the exclusion of any evidence of damages. Because Ms. Miller has failed to meet her obligation under Rule 26 to supplement her damages claim with calculations and documents, the Court **GRANTS** Polaris's request to prohibit evidence and argument regarding compensatory and punitive damages calculations.

### 9. Evidence relating to emotional distress caused by Ms. Miller's litigation with Polaris.

Polaris asserts that any evidence regarding emotional distress arising from this litigation should be excluded because it is irrelevant to the claims at issue—race discrimination and retaliation—and it should not be factored into any award of damages. "It would be strange if stress induced by litigation could be attributed in law to the tortfeasor. An alleged tortfeasor should have the right to defend himself in court without thereby multiplying his damages." *Stoleson v. United States*, 708 F.2d 1217, 1223 (7th Cir. 1983). Citing the Seventh Circuit's opinion in *Stoleson*, the Fourth Circuit explained, "[g]enerally speaking, litigation-induced emotional distress is never a compensable element of damages." *Knussman v. Maryland*, 272 F.3d 625, 642 (4th Cir. 2001). *See also Dukes v. United States Postal Serv.*, 2011 U.S. Dist. LEXIS 20930, at *4 (E.D.N.Y. Mar. 2, 2011) (citation and quotation marks omitted) ("litigant may not claim emotional and financial distress as a result of a costly litigation. [A] litigant who commences a protracted and expensive

lawsuit . . . may not then claim as an element of damages that he suffered emotional and financial anxiety because the lawsuit cost too much."). The Court **GRANTS** Polaris's request to prohibit evidence relating to emotional distress caused by Ms. Miller's litigation with Polaris.

### 10. Evidence regarding back pay or front pay damages.

Polaris asks the Court to exclude any reference to, or allegation of, lost back pay or front pay. Back pay and front pay are equitable remedies to be decided by the Court, not a jury. *See Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500–01 (7th Cir. 2000). Under similar circumstances, courts have barred evidence of back pay and front pay at trial. *See, e.g., Williams v. Lovchik*, 2012 U.S. Dist. LEXIS 99657 (S.D. Ind. July 18, 2012); *Tompkins v. Eckerd*, 2012 U.S. Dist. LEXIS 46718 (D.S.C. April 3, 2012); *Dixon v. Don Allen Auto City*, 2009 U.S. Dist. LEXIS 579 (W.D. Pa. Jan. 7, 2009). In line with this approach, the Court **GRANTS** Polaris's request to prohibit testimony and evidence concerning back pay and front pay. The Court will hold in abeyance its determination regarding Ms. Miller's entitlement to back pay and front pay until after the jury resolves issues of liability.

### 11. Other evidence or argument that lacks relevance and that would be unduly prejudicial.

Next, Polaris asks the Court to prohibit any evidence or argument regarding the Seventh Circuit's opinion in this case and references to the attorneys representing Polaris or lack of "corrective action," or the attorneys' litigation conduct because these matters are irrelevant and would be unduly prejudicial. Based on the differing burdens of proof required at trial and at the summary judgment stage and considering the jury's role, the Court determines that it would be unduly prejudicial and irrelevant to present evidence or argument regarding the Seventh Circuit's opinion in this case and the related procedural history of the case. The Court also determines that arguments concerning defense counsel's litigation strategy, the size of the law firm, the costs of

the defense, and the appearance of defense counsel are irrelevant, would cause an undue delay and waste of time, and could confuse the jury. Thus, the Court **GRANTS** Polaris's request to exclude this specifically noted evidence or argument.

### 12. Evidence of the net worth of Polaris and any "David and Goliath" arguments.

Polaris requests that the Court exclude any evidence or argument concerning the net worth of Polaris and any "David and Goliath" arguments, asserting that such would be irrelevant and could be unfairly prejudicial. They also request a prohibition against referring to defense counsel's appearance, costs, staff size, witness fees, and similar matters. The Court has addressed these matters concerning defense counsel in the previous section, granting that request. A jury instruction can address the concern raised about the relative size of the parties—a large corporation against an individual person. Without the context of specific questions actually being asked during trial, the Court declines at this stage of the litigation to prohibit this evidence or argument on the basis of relevancy. Thus, the Court **DENIES** this section of Polaris's Motion in *Limine*.

### 13. Any "Golden Rule" arguments.

Polaris asks the Court to prohibit Ms. Miller and her counsel from asking the jury to stand in Ms. Miller's shoes—a practice known as the "Golden Rule" argument. "[A] 'Golden Rule' appeal in which the jury is asked to put itself in the defendant's position is universally recognized as improper because it encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007) (citation and quotation marks omitted); *Spray-Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982) (Golden Rule remark is "clearly improper"). The Court **GRANTS** this request from Polaris. Both parties are to refrain from asking the jury to stand in the parties' shoes.

**14. Any reference to liability insurance.**

Based on Federal Rule of Evidence 411, Polaris asks the Court to prohibit any reference to liability insurance maintained by Polaris. Rule 411 explains, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." Because there are some permissible purposes for introducing evidence of liability insurance, and because the Court does not have the context of specific questions being asked during trial, Polaris motion is granted in part and denied in part. Ms. Miller may not make any reference to liability insurance maintained by Polaris in an attempt to prove whether Polaris acted negligently or otherwise wrongfully. However, the Court does not place a blanket prohibition on this evidence as it may be relevant if offered to prove matters such as a witness's bias or prejudice or proving agency, ownership, or control. Thus, the Court **GRANTS** in part and **DENIES** in part this section of Polaris's Motion in *Limine*.

**15. Any reference to Polaris's Motion in *Limine*.**

Finally, Polaris requests that the Court prohibit any reference to its Motion in *Limine* during trial because such would be irrelevant and unfairly prejudicial, pointing to Rules 401 and 403 and *Wilson v. Williams*, 182 F.3d 562 (7th Cir. 1999). Reference to this Order on the Motions in *Limine* may be necessary during trial if the parties attempt to offer evidence or argument that is prohibited by this Order. In such circumstances, it is inevitable that reference to the Motions in *Limine* will be made. However, referring to the Motions in *Limine* to raise a suspicion with the jury that the opposing party is trying to hide something from the jury is unfairly prejudicial and inappropriate. Thus, the Court **GRANTS in part and DENIES in part** this request. Both parties are to refrain

from referring to the Motions in *Limine* unless it is for the limited purpose of responding to a party's attempt to offer evidence or argument that is prohibited by this Order.

**B.  Ms. Miller's Motion in *Limine***

Ms. Miller requests an order in *limine* on three topics. Polaris filed a Motion to Strike or Alternatively for Leave for Additional Time to Object to Ms. Miller's Motion in *Limine* on April 20, 2016 (Filing No. 191). Because of the nature of the three requests in Ms. Miller's Motion in *Limine* and because of the way in which the Court resolves each of these requests, the Court **DENIES** Polaris's Motion to Strike or Alternatively for Leave for Additional Time to Object to Ms. Miller's Motion in *Limine*. The Court will discuss each request separately.

**1.  Summaries of voluminous writings that were not produced to Ms. Miller during discovery.**

First, Ms. Miller asks that the Court prohibit Polaris from offering evidence of summaries of voluminous writings that were not produced to Ms. Miller during discovery. Ms. Miller explains that Polaris intends to introduce summaries of voluminous writings, specifically "daily green bar reports" and the writings from which those reports were compiled, but these reports that were used to create the summaries were never produced or made available to Ms. Miller. Ms. Miller further asserts that Polaris failed to preserve the reports. Relying on Rule 1006, Ms. Miller argues that Polaris's summaries of the "daily green bar reports" should be excluded because she was never provided with the "daily green bar reports." Rule 1006 explains:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Based on Polaris's failure to produce or make available for inspection the "daily green bar reports," any summaries created from the "daily green bar reports" are not permitted at trial unless Polaris

produces the "daily green bar reports" to Ms. Miller at least three weeks before trial. Thus, this portion of Ms. Miller's Motion in *Limine* is taken under advisement.

### 2.  Ms. Miller's arrest record and two misdemeanor convictions.

Next, Ms. Miller asks that the Court prohibit Polaris from offering evidence of Ms. Miller's arrest record and two misdemeanor convictions for possession of marijuana. She relies on Federal Rules of Evidence 401, 403, 404, and 609 and asserts that such evidence is irrelevant and would be unfairly prejudicial. Additionally, Ms. Miller asserts that Polaris's use of such evidence in the context of trying to reduce front pay is not permissible because front pay is an issue to be determined by the Court, not the jury. As the Court already has noted in this Order, front pay and back pay are issues to be decided by the Court. Thus, the Court **GRANTS** Ms. Miller's request to prohibit introducing this evidence to the jury for the purpose of arguing front pay or back pay. However, the Rules of Evidence provide some permissible purposes for using this evidence during trial. Without the context of specific questions actually being asked during trial, the Court declines at this stage of the litigation to set a blanket prohibition on this evidence. Thus, the Court **GRANTS in part and DENIES in part** this section of Ms. Miller's Motion in *Limine*.

### 3.  Ms. Miller's marital status.

Finally, Ms. Miller explains that she has children but has never been married. She requests a prohibition on presenting argument or evidence regarding this fact because it can only be used to prejudice and stereotype her. She asserts that this fact has no relevance to the issues to be tried to the jury. Because of the potential for unfair prejudice that likely could not be cured if mentioned before the jury, the Court **GRANTS** this portion of Ms. Miller's Motion in *Limine*. If Polaris believes that it has a relevant and permissible purpose for presenting such evidence, counsel may

approach the bench during trial so that the Court may consider it in context and outside the presence of the jury.

## IV.   CONCLUSION

For the foregoing reasons, Polaris's Motion in *Limine* (Filing No. 183) is **granted in part and denied in part**, and Ms. Miller's Motion in *Limine* (Filing No. 189) is **granted in part and denied in part**. An order in *limine* is not a final, appealable order. During the course of the trial, if the parties believe that evidence being offered is inadmissible or irrelevant, counsel may approach the bench and request a hearing outside the presence of the jury. Polaris's Motion to Strike or Alternatively for Leave for Additional Time to Object to Ms. Miller's Motion in *Limine* (Filing No. 191) is **denied**.

**SO ORDERED.**

Date: 4/26/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@cgglawfirm.com

Jan S. Michelsen
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
jan.michelsen@odnss.com

Michelle R. Maslowski
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
michelle.maslowski@ogletreedeakins.com

Raymond J. Hafsten, Jr.
hafsten@sbcglobal.net